UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORINDA BROBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 06 C 3901 |
| | ) | |
| ILLINOIS STATE POLICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Illinois State Police ("ISP") for summary judgment on the complaint of Plaintiff Lorinda Broberg. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Broberg is a former employee of ISP. She joined the force in March 1997 and worked in various capacities as a trooper, instructor, and investigator until January 2003, when she became a Vehicle Inspection Officer. Though her primary duties were in that position, she also retained her responsibilities as a trooper.

Beginning in June 2000, various incidents involving Broberg took place that ISP now contends show a pattern of increasingly bizarre behavior. They included an altercation between Broberg and a fellow officer, an inspection of the emergency brakes

on ISP training vehicles after Broberg expressed concern whether they were functioning properly, references to items such as a frog and a colleague's intuition that coincided with aspects of Broberg's personal life, and Broberg's belief that some of her co-workers were playing a riddle game with her.

In 2002, ISP's Division of Internal Investigations investigated a complaint filed by a man named Chuck O'Connor whom Broberg had dated two years before for approximately 6 months. During the investigation, Broberg was accused of various displays of irrational conduct, all of which she denies.

In March 2003, the O'Connor complaint was to be discussed at a meeting of the Disciplinary Review Board. Two days before the meeting was to be held, Broberg reported that a fellow officer had made a sexually harassing comment to her the week before. She also contended that another officer had told a gas station attendant about the contents of an email message she had sent to O'Connor. The two officers she named were admonished by her supervising officer, Captain Emad Eassa.

In June, Captain Eassa decided to issue a written reprimand to Broberg in response to the allegations made by O'Connor. The ISP regional office approved of Eassa's decision to issue the reprimand.

On September 1, 2003, Broberg had conversations with two telecommunicators who were on duty for ISP. According to ISP, Broberg made reference to being

threatened by a gang member and a fireman, made comments that her lieutenant had been sent to get rid of her, and stated in different ways that she would use her weapon as she had been trained to do. According to Broberg, she spoke only with regard to an upcoming munitions training that she would be required to undergo.

The next day, Broberg was removed from duty and was required to undergo a psychological examination to determine her fitness for duty. The following month, she was examined by Dr. Cherry Weber, a clinical psychologist not associated with or employed by ISP. After interviewing Broberg and examining various documents provided to her by ISP, Weber concluded that Broberg suffered from a major depressive disorder and paranoid personality disorder. She recommended that Broberg be found unfit for duty with ISP.

In November 2003, the ISP Medical Review Board met to discuss Broberg's case and decided to follow Weber's recommendation. In January 2004, Broberg underwent an examination by Dr. Toby Motycka, another clinical psychologist. After examining Broberg, Motycka disagreed with Weber's diagnosis and opined that Broberg was in fact fit for duty as a state trooper. After receiving Motycka's report, ISP required Broberg to meet again with Weber to determine whether her condition had improved since her October 2003 evaluation. Contemporaneously, Broberg filed a charge with the EEOC alleging discrimination on the basis of sex and disability.

After meeting with Broberg the second time, Weber did not change her conclusion. ISP concluded that Broberg was unfit for duty and placed her on a nonoccupational disability leave for an indefinite period of time.

Broberg has not returned to duty with ISP since September 2, 2003. Though she remains on nonoccupational disability leave as an employee of ISP, she now works as an officer with a police department in Florida.

On July 20, 2006, Broberg filed a three-count complaint against ISP. Count I alleges that ISP unlawfully discriminated against her on the basis of a perceived disability in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Count II asserts violations of Title VII in the form of sex discrimination. Count III contends that ISP unlawfully retaliated against Broberg for her filing of charges in 2003 and 2004. Discovery has been completed and ISP now moves for summary judgment in its favor on the entirety of the complaint.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct.

2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *Id.* The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

With these principles in mind, we turn to the instant motion.

## DISCUSSION

**A. Disability Discrimination Claim**

The ADA provides remedies for discrimination against "qualified individual[s] with a disability." 42 U.S.C. § 12122(a); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139 (1999). The Rehabilitation Act provides like protection against discriminatory behavior by entities receiving federal funding. 29 U.S.C. § 794. A plaintiff proceeding under either of these statutes must show "(1) that she suffers from

a disability as defined in the statutes; (2) that she is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action as a result of her disability." *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).

To satisfy the first element, an employee need not actually have a disability. A claim can also rest on an employer's perception that an employee has an impairment that substantially limits a major life activity even if the employee does not in fact have such an impairment. 42 U.S.C. § 12102(2)(A); *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007). Broberg contends that ISP regarded her as having a mental illness that substantially limited her; she contests that she was in fact mentally ill. Under this type of theory, "the plaintiff must prove either that (1) the employer mistakenly believes that the employee has an impairment that substantially limits a major life activity, or (2) the employer mistakenly believes that an existing impairment that is not really limiting does substantially limit a major life activity." *Cassimy v. Board of Educ. of Rockford Public Schools, Dist. #205*, 461 F.3d 932, 937 (7th Cir. 2006).

There is no dispute that ISP removed Broberg from duty at least in part because of Weber's reports that Broberg was mentally ill. In its motion, ISP instead contends that the perceived mental impairment did not substantially limit her in a major life

activity. We find its arguments unpersuasive. Weber diagnosed Broberg as having major depressive and paranoid personality disorders, and the evidence that ISP offers to explain its actions indicates that it viewed her as unable to accurately perceive reality or to behave in a rational manner. These activities go beyond a mere ability to get along with others and are activities that are central to daily life. *See Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 691 (2002).

ISP also attempts to characterize Broberg's perceived difficulties as less than substantial by asserting that she did not display the behaviors all the time or with all the people in her life. However, to support its argument that its actions regarding Broberg were justified, it cites not only situations in her professional life but also from her personal life in the context of her interactions with O'Connor. Such evidence belies their claim that the limitation as they perceived it was circumscribed and isolated. Based on this evidence, a reasonable factfinder could conclude that ISP perceived Broberg to have a substantial limitation in a major life activity.

ISP also insists that it should be awarded summary judgment via the defense contained in 42 U.S.C. § 12113(a) and (b). Those subsections provide that an employer may require that employees "not pose a direct threat to the health or safety of other individuals in the workplace." § 12113(b). ISP relies heavily upon Weber's opinions to support the presence of this defense, but the conflicting conclusions of Weber and

Motycka and the divergent accounts of what occurred on September 1, 2003, preclude a definitive conclusion at this point that Broberg was a direct threat.

Viewing the evidence in a light most favorable to Broberg, a reasonable factfinder could find in her favor on the claims of disability discrimination in Count I, precluding summary judgment on this count in favor of ISP.

**B. Title VII Claim**

A plaintiff claiming discrimination in violation of Title VII can proceed under either the direct method or the indirect method of establishing her claim. *See Sun v. Bd. of Trustees of Univ. of Illinois*, 473 F.3d 799, 812 (7th Cir. 2007). A plaintiff using the direct method must set forth actual evidence of discrimination. *See id*.

If a plaintiff has no evidence that the motivation for an employment action was an unlawful one, he or she can still survive summary judgment using the indirect method. *Brewer v. Bd. of Trustees of University of Illinois*, 479 F.3d 908, 915 (7th Cir. 2007). Under that method, a plaintiff such as Broberg can raise a presumption that her employer acted with discriminatory motivations if she can establish four prima facie elements: 1) she is a member of a protected class; 2) she was meeting her employer's legitimate expectations of her performance on the job; 3) she suffered an adverse employment action; and 4) ISP treated a similarly situated employee who was not in the same protected class more favorably than it treated Broberg. *See Burks v. Wisconsin*

*Dep't of Transportation*, 464 F.3d 744, 750-51 (7th Cir. 2006). If Broberg is able to advance proof of each element, ISP can rebut the presumption of unlawful discrimination by setting forth a legitimate business reason for taking the actions it did. *See id.* at 751. Broberg must then establish disputed issues of fact regarding whether the reason ISP advances is a pretext designed to cover up the true reasons for the action. *See id.* If she cannot, ISP is entitled to summary judgment. *See id.*

With respect to her charge of discrimination on the basis of her sex, Broberg does not set out any direct evidence that ISP acted against her on the basis of her sex. ISP argues that she cannot prevail under the burden-shifting method either because she has not identified any similarly situated male trooper who was treated more favorably than she was. Broberg makes no attempt to identify any of her former colleagues to refute this contention. Accordingly, we conclude that Broberg cannot establish a prima facie case of sex discrimination, so summary judgment in favor of ISP is appropriate on Count II of the complaint.

**C. Retaliation Claim**

Lastly, ISP requests summary judgment of Broberg's retaliation claim, which is based on a contention that ISP reprimanded her, made her submit to the fitness for duty examinations, and placed her on administrative leave in retaliation for her filing internal

charges of sex discrimination in 2003 and charges with the EEOC of discrimination on the basis of sex and disability in 2004.

As is the case for claims of unlawful discrimination, claims of unlawful retaliation can be established using a direct or an indirect method. *See Roney v. Illinois Dep't of Transportation*, 474 F.3d 455, 459 (7th Cir. 2007). A plaintiff using the direct method must provide evidence that she was subject to an adverse action as a result of engaging in a statutorily protected activity. *See id.* Under the indirect method, a plaintiff who does not have direct or circumstantial evidence can raise a presumption that the adverse action resulted because of the protected activity by demonstrating four prima facie elements. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006). They are 1) the plaintiff complained about discrimination, 2) she was subjected to an adverse action, 3) despite her satisfactory job performance, and 4) no similarly situated employee who did not complain suffered such an action. *See id.*

As was true with her claim of sex discrimination, Broberg does not offer any direct evidence that ISP's actions were driven by a retaliatory motive. Accordingly, she must proceed under the indirect method of proof. ISP attacks the viability of this claim on a variety of fronts; a comprehensive challenge rests in its assertion that Broberg cannot make out a prima facie case of retaliation because she has not identified any similarly situated employees who were not subject to the same actions as she was. The

inquiry into whether the situation of a potential comparator is similar enough to the plaintiff's to constitute a sufficient prima facie showing is based in common sense rather than rigid formulas. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). However, a plaintiff must still identify someone with enough similarity in key areas that a jury could infer that the only meaningful differentiation between the two is a previous charge of discrimination against the employer. *Id*. Broberg has identified no one; the inquiry is flexible, but not that flexible. Consequently, we conclude that summary judgment in favor of ISP is appropriate on the retaliation claims contained in Count III.

## CONCLUSION

Based on the foregoing, ISP's motion for summary judgment is denied as to Broberg's claims of disability discrimination and granted as to her sex discrimination and retaliation claims.

Charles P. Kocoras
United States District Judge

Dated: February 4, 2008